SARAH WALTER, *Appellant,* v. WILLIAM DOUGLAS, *et al., Appellees.*

## Opinion Filed November 28, 1917.

W. and D. were copartners doing business as fire insurance agents. They were local agents for several insurance companies, and general agents for the C. company. The copartners agreed to dissolve the copartnership and entered into a contract to that end. The partnership was an equal partnership and the purpose of the agreement was to prescribe the method for a complete liquidation of its entire business and an equal division of the property after all debts were paid.

HELD. That money deposited in bank by the copartnership to the credit of the General Agency Account was an asset of the firm and did not under the contract of dissolution become the property of one of the copartners who continued as the general agent of C. company.

Appeal from Circuit Court for Duval County, George Couper Gibbs, Judge.

Decree reversed.

*Axtell & Rinehart,* for Appellant;

*Botts & Blount,* for Appellees.

ELLIS, J.—This is an appeal by complaint from a decree dismissing a bill praying for an account to be stated between her and the defendant William Douglas, her former partner, upon a contract between them for a dissolution of the copartnership and against the United States Fidelity & Guaranty Company surety in a bond given by Douglas to carry out the terms of the agreement on his part to be performed.

The only matter of difference between the parties is, whether certain moneys on deposit in a bank to the credit of the copartnership when the contract of dissolution was entered into belongs to the defendant, or should be divided between them under the agreement of dissolution. The determination of this point involves a construction of paragraphs six and eight of the contract.

Sarah Walter and William Douglas were copartners doing business under the firm name of Philip Walter & Douglas. They did an insurance business in Jacksonville, Florida, that is to say the firm was the local agent for a number of Fire Insurance Companies doing business in Florida, and the General Agents for the Connecticut Fire Insurance Company in the State. On the 31st day of July, 1915, they agreed to dissolve the copartnership and entered into a written agreement to that effect. The general agency account was kept by the firm separtely from its other accounts as local agents.

At the time of the dissolution of the copartnership the assets of the firm consisted of money in bank on deposit, a balance due by the general agency account, accounts due to the firm, an automobile and office furniture.

The contract of dissolution provided, among other things, that the books of the firm should be audited,

showing all uncollected premiums and other assets of
the firm, and all balances due to the Insurance Com-
panies represented by the firm; all outstanding accounts
due the firm should be collected, each member to give
the other a bond for the faithful performance of the
agreement on his part; that all collections should be
deposited daily to an account in the bank in the firm
name, and the funds disbursed to the companies as the
collections reached the sum of five hundred dollars; that
the member of the firm whose debt to the firm exceeded
his partner's should deposit the excess to their joint
account in the bank; that the office furniture should be
equally divided between them; that the cost of auditing
the books and advertising the dissolution should be paid
from the firm assets; that if the Connecticut Fire Insur-
ance Company should continue its general agency with
either member of the firm, that member should within
sixty days deposit to the firm's account in bank the
amount due by the General Agency Account to the firm;
that the new General Agent should assume all the lia-
bilities of the General Agency and shall be entitled to
have and receive all *its* assets, and shall procure from
the Connecticut Fire Insurance Company a release of
the other member of the firm from all liability to the
Insurance Company; and that after all liabilities of the
firm are paid and any *money* or *other* assets remain, they
shall be equally divided between them.

Paragraphs Six and Eight of the contract are given
here in full:

"6. That if the Connecticut Fire Insurance Company
shall continue its general agency with either member of
the firm, then the said member representing the said
Connecticut Fire Insurance Company as general agent
shall within sixty days from this date, deposit to the

said bank account the amount, if any, which the said general agency account is found to be due to the said firm: That is,—the said member so acting as general agent · shall deposit to said account the difference between the accounts payable to said general agency, as its assets, and the liabilities of said general agency, and that the said members so acting as such general agent shall assume all the liabilities of the said general agency and shall be entitled to have and receive all of its assets, and that the said general agent shall procure from the said Connecticut Fire Insurance Company a release of the other member of said firm from all liability to the said Connecticut Fire Insurance Company".

"8. That after all liabilities of said firm are paid and discharged, as hereinbefore proivded, then any moneys or other assets thereafter remaining shall be divided equally between the said members."

It was stipulated between the parties that at the close of business on July 31, 1915, there was on deposit in the bank to the credit of the General Agency account of the firm the sum of eleven hundred and eighty-three dollars and ten cents; that there was due from various agents to the General Agency account of the firm the sum of nine thousand one hundred and sixteen dollars and ninety-three cents; that there was due from the General Agency to the Connecticut Fire Insurance Company six thousand four hundred and twenty-eight dollars and forty-one cents, and that the Local Agency of Philip Walter & Douglas owed the General Agent the sum of one thousand seven hundred and six dollars and forty-one cents, which amount was included in the amount due from various agents to the General Agency,

and stated above to be ninety-one hundred and sixteen
dollars and ninety-three cents.

The Connecticut Fire Insurance Company continued
the defendant Douglas as its General Agent in Florida.

The complainant below contended that Douglas should
deposit to the account of the firm established under the
agreement of dissolution the amount on deposit in bank
to the credit of the General Agency account of the firm
of Philip Walter & Douglas: that is to say that in
arriving at the "difference between the accounts pay-
able to said General Agency as its assets, and the lia-
bilities of said General Agency" the amount in bank to
the credit of the General Agency account should be
considered as being on the debit side of the ledger, that
is as an asset, as "accounts payable to said General
Agency as its assets."

The defendant contends that no account should be
taken of the item whatever. His idea seemingly being
that the "General Agency account" at the bank would
continue as it was, and to which he would succeed as
the Connecticut Insurance Company's General Agent.
This view of the case the Chancellor seemed to take, and
decreed the equities to be with the defendant, and dis-
missd the bill.

It is conceded possibly that the money on deposit to
the credit of the General Agency account of the firm
belonged to the copartnership; that it was an asset of
the firm; that if neither member of the firm had been
appointed or continued as General Agent of the Con-
necticut Fire Insurance Company, the bank account
would have been equally divided between them, or which
is the same thing, used to pay partnership debts.

The partnership seemed to have been an equal part-

nership, and the purpose of the agreement was to pre-
scribe the method for the complete liquidation of its
entire business and an equal division of its property
after all debts were paid.   The term "Liabilities of said
General Agency" as used in the sixth paragraph of the
agreement is perfectly clear.   It meant the debts, pecu-
niary obligations of the firm in its General Agency busi-
ness.   These liabilities were first to be taken into account
and paid by the firm, that is to say, with the firm's
assets contained first in the General Agency account,
and if those were not sufficient, then with other assets
of the firm.   After which the member succeeding to the
General Agency should transfer to the account of the
firm what if anything was left over in money in the
General Agency account.   Now if the liabilities of the
General Agency were paid by the firm with its assets,
irrespective of the funds to the credit in bank of the
General Agency account and that account was to become
the property of the member succeeding to the General
Agency of the Connecticut Fire Insurance Company,
where was the consideration for the transfer by Sarah
Walter to her quondam partner Douglas, of her interest
in the General Agency bank account?   Which interest
amounted to five hundred and ninety-one dollars and
fifty-five cents.   It was not the intention of the agree-
ment surely that one party to it should present to the
other the former's half interest in the bank account in
the event the latter should be fortunate enough to secure
the General Agency.   Such quixotic generosity should by
clear and unmistakable terms be made to appear as the
intention of the parties to an agreement.

Paragraph eight of the agreement would seem to clear
any doubt as to the parties' intention created by para-
graph six.   By the latter paragraph all liabilities of the

firm were to be paid, whatever assets were left were to be divided equally. The bank account was an asset of the firm. Even if it should be ignored under paragraph six as the defendant insists, the account would still be an asset of the firm to be divided under paragraph eight.

We have carefully read the briefs of counsel, but we cannot agree that so obvious an intention as that entertained by the parties to this agreement and expressed therein can be frittered away by fine distinctions as to the difference in meaning between the phrases "Accounts payable" and "Accounts payable to," or whether a bank account is "money" or an "account payable." In this case it was an asset of the copartnership and, as we read the agreement, was intended by the copartners to be equally divided between them. In this view of the case the decree of the Chancellor was erroneous and should be reversed.

It is so ordered.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.